Kristine E. Johnson, USB #7190
Juliette P. White, USB #9616
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
KJohnson@parsonsbehle.com
JWhite@parsonsbehle.com
ecf@parsonsbehle.com

Philip S. McCune (*pro hac pending*)
Christopher T. Wion (*pro hac pending*)
Jesse Taylor (*pro hac pending*)
**SUMMIT LAW GROUP**
315 Fifth Avenue S., Suite 1000
Seattle, WA 98104-2682
Telephone:  206.676.7038
philm@summitview.com
chrisw@summitlaw.com
jesset@summitlaw.com

*Attorneys for Plaintiff AMAZON.COM, INC., a Delaware corporation, AMAZON TECHNOLOGIES, INC., a Nevada corporation; and AMAZON SERVICES LLC, a Nevada limited liability company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation, AMAZON TECHNOLOGIES, INC., a Nevada corporation; and AMAZON SERVICES LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>PRIME GLOBAL SOURCE, LLC, a limited liability company, CREATING WEALTH INTERNATIONAL, LLC, a limited liability company, CREATING WEALTH INSTITUTE, LLC, a limited liability company, CREATING WEALTH ACADEMY, LLC, a limited liability company; and DOE Companies 1 - 20,<br><br>Defendants. | **COMPLAINT**<br><br><br>Case No. _____<br><br><br>Judge _____ |

Prime Global Source ("PGS") and its affiliates (collectively "Defendants") are businesses whose purpose is to persuade unwitting entrepreneurs to spend thousands of dollars on seminars and training programs of little, if any, value.  Defendants accomplish this objective in part by misleading consumers into believing that they are affiliated with Amazon.com, Inc. ("Amazon") by using logos that are confusingly similar or nearly identical to Amazon's distinctive trademarks ("Amazon Marks").  Defendants represent that they offer the "unique opportunity to work with industry experts, proven professional sellers, and elite business strategists," and invite consumers to attend a free seminar to find out more information.  The free seminar serves as a vehicle to convince attendees to sign up for a three-day training course, ranging in price from $495 to $995.  But the three-day training course usually proves to be useless, as attendees are then told that the real opportunities are only available to those individuals who are willing to spend between $10,000 to $30,000 on additional training.  The $30,000 "Executive Seller Membership" package purportedly includes coaching, training, and unspecified benefits associated with Amazon's FBA ("Fulfillment by Amazon") service for one year, "with the expectation that you would get from about $5k/month profits in 8 to 9 months to $10k/month profits [within] a year."

The profits promised by Defendants do not materialize for the vast majority of PGS students.  By the time that students realize they have been taken advantage of, the limited refund period has expired and Defendants refuse further communication.  Those students have then turned to Amazon for answers, mistakenly believing that Amazon is affiliated with Defendants. Defendants' business practices and use of logos that are confusingly similar to the Amazon Marks seriously damages Amazon's reputation and the goodwill and trustworthiness associated with the Amazon Marks.

## I.   SUMMARY

1. This case primarily concerns the infringement, dilution, and tarnishment of the Amazon Marks by Defendants. Defendants use a series of logos ("PGS Logos") that are confusingly similar to or indistinguishable from the Amazon Marks. The PGS Logos use the same color combinations, font, design, and naming conventions as Amazon Marks. The PGS Logos have been deliberately designed to capitalize on the success, goodwill, and trustworthiness of the Amazon Marks and are intended to deceive consumers into believing that Defendants are affiliated with Amazon.

2. Defendants improperly exploit Amazon's name, intellectual property, and reputation to sell their get-rich-quick scheme to unwitting entrepreneurs around the country. These victims pay tens of thousands of dollars to Defendants based on Defendants' misleading portrayal of an affiliation with Amazon, relying on these misrepresentations to start a business selling in the stores available at Amazon.com and/or significantly increase their profits from doing so. Because of Defendants' improper guidance and other bad acts, these entrepreneurs often fail in their efforts, enriching only Defendants. Many of these victims have complained to Amazon, mistakenly believing that Amazon is affiliated with Defendants.

3. At the center of the scheme is Prime Global Source, a company whose name intentionally and confusingly implies a connection with Amazon's "prime" and "global" services. Amazon does not yet fully understand the hidden relationships between and among the corporate Defendants or the products and services provided by each, as these relationships are obfuscated by Defendants. Amazon believes that some of the products and services described in this Complaint

may be entities owned, operated, or otherwise closely related to the named Defendants and, on that basis, has listed as additional Defendants DOE Companies 1-20.

4. Defendants have engaged in a concerted, coordinated, and systematic effort to exploit Amazon's name, brand, and intellectual property to convince people around the country to spend tens of thousands of dollars on worthless and/or over-priced products and services. Some PGS victims have contacted Amazon about Defendants' products and services, not understanding the distinction between Amazon and Defendants, even after attending Defendants' seminars. Large numbers of victimized students share their stories on online forums and blogs.

5. Defendants' misconduct has caused and is causing irreparable harm to Amazon's reputation and the goodwill it has developed both with its customers and its Sellers.

## II.     PARTIES

6. Plaintiff Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Plaintiff Amazon Technologies, Inc. is a Nevada corporation, with its principal place of business in Seattle, Washington. Plaintiff Amazon Services, LLC is a Nevada limited liability company with its principal place of business in Seattle, Washington. Amazon's wholly-owned subsidiaries, Amazon Services, LLC and Amazon Technologies, Inc., own and operate the stores available at Amazon.com and the Amazon Marks, respectively. Amazon has more than 250 million active customers. In addition to Amazon's own retail sales, many third-party Sellers make their own products available via the Amazon stores.

7. Defendant Prime Global Source ("PGS") is a limited liability company organized under the laws of the State of Utah. Its address is listed as 540 N 200 W Orem, Utah 84057.

4

4822-8055-8506v1

Although PGS appears recently to have been dissolved, the activities that are the subject of this Complaint continue through its affiliated entities.

8.  Defendant Creating Wealth Institute is a limited liability company organized under the laws of the State of Utah. Its address is listed as 798 Redford Drive, Provo, Utah 84604.

9.  Defendant Creating Wealth International is a limited liability company organized under the laws of the State of Utah. Its address is listed as 798 Redford Drive, Provo, Utah 84604.

10. Defendant Creating Wealth Academy is a limited liability company organized under the laws of the State of Utah. Its address is listed as 798 Redford Drive, Provo, Utah 84604.

11. Defendants PGS, Creating Wealth Institute, Creating Wealth International, and Creating Wealth Academy all share the same registered agent and managing member. On information and belief, Defendants are shell companies, created to obfuscate their relationship with one another and to insulate themselves from liability, that have engaged and continue to engage in the same or similar conduct that forms the basis of Amazon's claims as described in this Complaint.

12. Defendant DOE Companies 1 – 20 are believed to be owned and operated by, or otherwise closely related to, the named Defendants and have engaged and continue to engage in the same or similar conduct that forms the basis of Amazon's claims as described in this Complaint. This Complaint will be amended to name each such entity once identified through discovery.

### III. JURISDICTION/VENUE

13. This action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"). Accordingly, this Court has federal question jurisdiction over the subject matter

4822-8055-8506v1

of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), (b).  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

14.     Venue in this district is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claims occurred in this district.

15.     This Court has personal jurisdiction over Defendants, who have conducted business activities in and directed to Utah and are primary participants in tortious acts in and directed to Utah.

## IV.     FACTS

### a.     The Amazon Marks

16.     Amazon is a premier shopping destination in the United States. There are millions of visitors to Amazon's stores each day, and millions of daily sales transactions.

17.     Amazon spends significant time, money, and effort advertising and promoting the products and services on which its trademarks are used. Through these and other investments in its customers' trust, Amazon has developed a reputation for quality products and services.

18.     For hundreds of millions of customers, the names "Amazon" and "Amazon.com" have come to represent wide selection, fast delivery, everyday low pricing, outstanding customer service, and unsurpassed trust for Internet commerce.  There is a close association among consumers between the Amazon stores, its trademarks, and the products and services it offers.

19.     Amazon publishes an easily accessible non-exhaustive list of its trademarks on its website  (*see*  https://www.amazon.com/gp/help/customer/display.html/?nodeId=200738910). Included among that list are references to the following representative marks at issue in this lawsuit (the "Amazon Marks"):

4822-8055-8506v1

      a.    (Smile design) (Reg. Nos. 841614, 2951941, 5775763, 4841614);

      b.    Amazon Logo (including Smile) (Reg. Nos. 5038752, 4171965, 5775740);

      c.    Amazon Prime (Reg. No. 3419886);

      d.    Amazon Global (common law trademark);

      e.    Prime (Reg. Nos. 3234643, 5218535, 5218536, 5489315); and

      f.    Prime Video (common law trademark).

20. Amazon, through its wholly-owned subsidiaries, is the owner of all rights in the Amazon Marks.

21. Amazon has continuously used these marks to distinguish its products and services. As a result of Amazon's long-standing use of the Amazon Marks, strong common law trademark rights have amassed in the Amazon Marks. Amazon's use of the marks has also built substantial goodwill in and to the Amazon Marks.

22. Through Amazon's advertisement and promotion and the high level of recognition by the general consuming public of the United States, the Amazon Marks are famous and became famous prior to Defendants' illegal acts—indeed, the Amazon Marks were famous before any of the corporate Defendants were incorporated. The Amazon Marks are famous by virtue of their long-term continuous use and nationwide recognition by the general consuming public as a designation of the goods and services offered by Amazon and the trust that consumers can place in purchasing a product from the Amazon stores.

23. Moreover, due to Amazon's advertisement and promotion of the Amazon Marks, consumers have come to recognize the Amazon Marks as a symbol of the trustworthiness of the products and services bearing the Amazon Marks.

24. The Amazon Marks are valuable assets of Amazon. To protect that value and maintain the positive association between the Amazon Marks and Amazon's services and the goods that can be purchased in its stores, Amazon only permits others, including Sellers, to use its marks in limited circumstances and subject to explicit guidelines designed to avoid consumer confusion.

    b. **<u>Selling on Amazon</u>**

25. Since opening its virtual doors on the World Wide Web in July 1995, Amazon has become one of the most trusted consumer brands in the world. Each day, millions of consumers use Amazon's stores to purchase a wide range of products across dozens of product categories from Amazon and third-party sellers. The Amazon brand allows customers to shop with confidence online regardless of whether the products are offered directly by Amazon or through third-party sellers.

26. Amazon has been able to attract third-party sellers to its ecommerce store largely as a result of the brand recognition, reputation, and customer goodwill it has worked diligently to develop and enhance over the years. Amazon's third-party seller program provides registered sellers ("Amazon Sellers" or "Sellers") access to Amazon's customer base and other significant benefits. In turn, their participation in the Amazon stores and the wider array of products they offer expands Amazon's online catalog and drives down prices, ultimately increasing consumer options and enhancing the customer experience.

27. To ensure that customers receive competitive prices, quality products, and excellent customer service, regardless of product source, Amazon has developed a uniform set of contract terms, conditions, policies and guidelines that govern Seller activities. Seller compliance with

these terms is an important part of maintaining Amazon's brand, customer goodwill, and a consistent consumer experience.

28. Amazon offers Sellers the option of fulfilling orders through its FBA – "Fulfillment by Amazon" – service.  With the FBA service, Sellers can ship their products to one of the many Amazon fulfillment centers strategically located around the country and Amazon will pick, pack, and ship these products to the end customer on behalf of the Seller.  Products offered through Amazon's FBA service are displayed with Amazon's Prime logo.  Many products shipped from Amazon's fulfillment centers are also eligible for Amazon Prime free two-day shipping for Prime members and free shipping for all customers.  Amazon also provides customer service for these products, handling questions, complaints, returns, and refunds.

29. Anyone interested in selling products in the Amazon store must first create a Selling on Amazon account using Amazon's Seller Central, the web interface where Sellers open and manage their selling account.  Sellers also must agree to the Amazon Services Business Solutions Agreement, which governs Seller access to and use of Amazon's services and sets forth Amazon's rules and restrictions for selling through Amazon's stores.

30. Once a Seller is registered, Selling on Amazon is a simple process involving three main components: listing, selling, and shipping.

31. Once listed, a Seller's products become visible to customers on Amazon.com and can be bought through Amazon's standard process, which includes features like 1-Click buying and Amazon's A-to-Z Guarantee.  Amazon has invested significant time, effort, and resources to develop a brand that millions of people trust, and customers have come to expect that they can

make quick, easy, and worry-free purchases in Amazon's stores, regardless of the source of the product being sold.

32. Once a customer places an order, Amazon notifies the Seller. Orders are then fulfilled in one of two ways: by the Seller itself or by Amazon, if the Seller is using Amazon's FBA service.

33. Prime members often prefer to buy products eligible for Amazon Prime free two-day shipping. Many other customers also prefer to buy products for which Amazon handles the shipping and provides customer service.

34. For these and other reasons, Amazon's FBA service can be particularly valuable to new Sellers without a proven track record.

35. Amazon's FBA service also can be very attractive to smaller-scale Sellers seeking to scale their business and reach more customers. Amazon has no minimum product quantity for intake into its fulfillment centers, which provides a significant value proposition for Sellers with modest or fluctuating inventory. Sellers using Amazon's FBA service are charged for the storage space they use and the orders that Amazon fulfills, providing a flexible, cost-effective, and simple fulfillment solution.

36. Amazon's FBA service addresses several significant barriers to the online store faced by new and small-scale Sellers. In this way, Amazon's FBA service opens doors and creates opportunities, particularly for would-be entrepreneurs.

37. But with easier selling comes inexperienced sellers and, unfortunately, bad actors who take advantage of that inexperience.

### c. Defendants' Unlawful Activities

38. Defendants have exploited and are exploiting the goodwill and trustworthiness of the Amazon Marks by designing the PGS Logos in a strikingly similar or indistinguishable manner. The PGS Logos use the same colors, font, design, and naming conventions as the Amazon Marks. By way of example, Defendants' use of an airplane ("Airplane Logo") at the right end of a curved line is substantially identical, and confusingly similar, to Amazon's registered "smile design":

| Amazon Mark | PGS Infringing Use |
|---|---|

39. Defendants' use of the word "Prime" is similarly confusing, particularly when used in conjunction with the infringing Airplane Logo. Defendants have also adopted the same blue and black color scheme and use a font that is substantially similar to the Amazon Marks.

| Amazon Mark | PGS Infringing Use |
|---|---|



40. Defendants' use of the word "Global," particularly when used in conjunction with the infringing Airplane Logo and the word "Prime," is also highly likely to confuse consumers.

11

| Amazon Mark | PGS Infringing Use |
|---|---|
|  |  |
|  |  |
| |  |

41. Defendants' use of the foregoing representative examples of copies, schemes, fonts, and logo designs in connection with the offering, marketing, and sale of Amazon-related goods and services is calculated to trade on Amazon's reputation and goodwill and therefore constitutes trademark infringement and various forms of unfair competition.

42. Additionally, Defendants' use of logos that are substantially identical or confusingly similar to the Amazon Marks has resulted in actual consumer confusion. For example, an individual posted on the Better Business Bureau's website that:

> Creating Wealth Institute sold themselves as Amazon. They also went by another name, Prime Global Source … They then sent emails addressed as if they are Amazon to inform me of the class.

43. Consumers have also contacted Amazon directly to complain about PGS, mistakenly believing that PGS is affiliated with Amazon. For example, one customer sent the following complaint to Amazon:

> I apologize for having to email you directly but we are frustrated with the sellers performance team on Amazon. My boyfriend and I wanted to start a business on Amazon

and went to a seminar with Prime Global Source, watched videos and did research. When we were advised at the seminar to open the account we did (October 21, 2017) and it was immediately suspended, we contacted seller support multiple times by phone and email and thought we had the problem with the address corrected. We were charged 39.99 and after a week of emailing and calling seller support we were told by the seller performance team, we could not sell on Amazon with no explanation.

44. Defendants have or have had a website, a Twitter account, a LinkedIn page, a Facebook page, an Instagram account, a Google Plus account, and a Pinterest page. Defendants have used infringing logos to market their services on all of these platforms.

45. A number of Defendants' students have publicly complained about Defendants' unfair and deceptive business practices, enhancing Amazon's concerns regarding any perceived association with Defendants. The following are representative samples of student complaints:

> Prime Global Source (PGS) has practiced deceptive and unfair practices in advertising and selling me intentionally deficient services for building an online e-commerce business. After securing nearly $22,500 from me, PGS became unresponsive and failed to provide the services it had promised. …. PGS' representatives' advertising in both print and verbal form are misleading, false, and unattainable, which is further demonstrated by PGS' failure to respond to phone calls or emails when asked to deliver on and clarify their promised services. Unfortunately, it was only after experiencing these deceptive practices that I researched PGS and found a multitude of complaints filed with the better Business Bureau, Ripoff Report, Amazon forums, and other scam forums. … Legal Entity Setup: Even though I paid $1,495 for help to create my legal entity, including setting up an Arizona LLC within a week of payment, no such LLC was ever created. In fact, I called and emailed the person who contacted me for this purpose, and I haven't received any follow-up to this date, even though a season is gone. After they charged my credit card, they disappeared. I was charged an additional $85 for filing fees with the Arizona Corporation Commission (ACC), which I was not informed before making the charge to my credit card. …. The AZ Corporation Commission confirmed that there was not needed to pay the $1495 for any consultations, that the fee was $85 only. September 11, 2018 – I emailed the coach that sold me the membership. After I complained about the services, she said she will get to the bottom of it. However, to date, I have not heard back from her. To add to the deceiving experience, I learned later that she was not even a PGS employee…

> I can't believe I allowed them to rip me off. I bought thousands of dollars worth of inventory from one of their wholesalers they recommended and after 6 months, they still

haven't delivered the products. Their website of wholesalers is a joke. They just find these wholesalers from the trade shows and put them on their websites. These folks are crooks.

I realized that I had brainwashed. But It was too late. In that 3 days meeting. I saw few ladies signed up as well. I talked to them who were caregivers just like me. make $14 per hour for very hard working. I am sure they are struggling as well. The worse feeling about this course is that they are not even call me back asking how I am doing in this course, or any helps needed to a student…etc. I am so embarrassed to tell people that I am paid 30K for that. One of my friend made good point. If I made 10% netprofit, I will need sell $300,000 worth products which is IMPOSSIBLE in now days. Such a RIPOFF

## V.  CAUSES OF ACTION

### COUNT I:  TRADEMARK INFRINGEMENT
### (LANHAM ACT § 32, 15 U.S.C. § 1114)

46. Amazon incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

47. The Amazon Marks are valid, distinctive, and protectable marks.

48. Amazon, through its wholly-owned subsidiaries, is the owner of the Amazon Marks.

49. Defendants have used reproductions and colorable imitations of the Amazon Marks in commerce in connection with the sale and advertising of goods and services without authorization. Defendants have done so in a manner that is likely to cause and has caused consumers to be confused, mistaken, or deceived as to the origin, source, sponsorship or affiliation of Defendants' goods and services, and is designed, intended, likely to cause and has caused consumers to believe, contrary to fact, that Defendants' goods or services are sold, authorized, endorsed, or sponsored by Amazon, or that Defendants are in some way affiliated with or sponsored by Amazon.

50. With respect to the registered Amazon Marks, Defendants' conduct constitutes trademark and service mark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Amazon's rights in the Amazon Marks and with the willful and deliberate intent to cause confusion and trade on Amazon's goodwill.

52. Defendants' unauthorized and unlawful conduct is causing immediate and irreparable harm to Amazon and its goodwill and reputation, and will continue to both damage Amazon and confuse the public unless enjoined by this Court, including an order of destruction of all Defendants' infringing materials. Amazon has no adequate remedy at law. Amazon is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

### COUNT II: COMMON LAW TRADEMARK INFRINGEMENT; FALSE ASSOCIATION; FEDERAL UNFAIR COMPETITION
### (LANHAM ACT, § 43(A); 15 U.S.C. § 1125(A))

53. Amazon incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

54. Defendants' unauthorized use in commerce of the Amazon Marks as alleged herein is designed, intended, likely to deceive and has deceived consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is designed, intended, likely to cause and has caused consumers to believe, contrary to fact, that Defendants' goods and services

are sold, authorized, endorsed, or sponsored by Amazon, or that Defendants are affiliated with or sponsored by Amazon.

55. Defendants' conduct as alleged herein constitutes common-law trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

56. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Amazon.

57. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Amazon and to its good will and reputation and will continue to both damage Amazon and confuse the public unless enjoined by this Court. Amazon has no adequate remedy at law.

58. Amazon is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Section 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

### COUNT III: DILUTION AND TARNISHMENT OF A FAMOUS MARK
### (LANHAM ACT § 43(C); 15 U.S.C. § 1125(C))

59. Amazon incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

60. Without Amazon's authorization, Defendants have used and are using marks that are confusingly similar to the Amazon Marks to sell their products and services to Amazon Sellers and those desiring to become Sellers on Amazon's ecommerce store. Defendants have used marks that are confusingly similar to the Amazon Marks in interstate commerce, wrongfully capitalizing

on Amazon's reputation and goodwill to induce Amazon Sellers or potential Sellers to buy their products and services.

61.     The Amazon Marks are distinctive and familiar to millions of Amazon's customers and identified with Amazon's services and the goods offered in its stores.  Of the Amazon Marks, the three most well-known are the Amazon Logo, Smile design, and Amazon Prime marks, which readily qualify as famous trademarks within the meaning of 15 U.S.C. § 1125(c) (the "famous marks").

62.     Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Amazon's famous marks.

63.     Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Amazon's famous marks by undermining and damaging the valuable goodwill associated with those marks.

64.     Upon information and belief, Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have already caused Amazon irreparable damage, and will, unless enjoined, continue to so damage Amazon, which has no adequate remedy at law.

65.     Amazon is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

## COUNT IV: VIOLATION OF UTAH UNFAIR COMPETITION ACT
## (UTAH CODE § 13-5A-10 ET SEQ)

66. Amazon incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

67. Defendants, through the conduct alleged herein, have engaged in intentional business acts or practices that are unlawful, unfair and/or fraudulent, and have led to a material diminution in value of Amazon's intellectual property.

68. Upon information and belief, Defendants' acts as alleged herein are intentional and willful.

69. Amazon is entitled to, among other relief, actual damages, costs and attorney fees, and punitive damages under Utah Code section 13-5a-103(1).

### VI.   RELIEF REQUESTED

WHEREFORE, Amazon respectfully prays for the following relief:

A. That the Court enter judgment in Amazon's favor on all claims brought by Amazon;

B. That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all others in active concert or participation with them, from:

    i. using the Amazon Marks or marks confusingly similar to Amazon Marks;

    ii. holding themselves or their companies out to be affiliated with or sponsored or endorsed by Amazon;

    iii. assisting, instructing, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) – (ii) above;

C. That the Court enter an order requiring forfeiture and/or destruction of all materials used by Defendants to display the PGS Logos and Amazon Marks without authorization;

D. That the Court enter an order requiring disgorgement of Defendants' profits and awarding Amazon compensatory and treble damages, including pre-judgment and post-judgment interest;

E. That the Court enter an order requiring Defendants to pay to Amazon both the costs of this action and the reasonable attorneys' fees incurred by Amazon in prosecuting this action; and

F. That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.

DATED this 18th day of October, 2019.

*/s/ Kristine E. Johnson*
Kristine E. Johnson
Juliette P. White
PARSONS BEHLE & LATIMER

SUMMIT LAW GROUP, PLLC
Attorneys for Plaintiff Amazon.com, Inc.
By s/ Phillip S. McCune
By s/ Christopher T. Wion
By s/ Jesse L. Taylor
philm@summitlaw.com
chrisw@summitlaw.com
jesset@summitlaw.com

*Attorneys for Plaintiff AMAZON.COM, INC., a Delaware corporation, AMAZON TECHNOLOGIES, INC., a Nevada corporation; and AMAZON SERVICES LLC, a Nevada limited liability company*